## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| GREGORY A. BENSON | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No. 1:08-cv-1285-SEB-DML |
| | ) | |
| JEFFERY WRIGLEY, | ) | |
| | ) | |
| Defendant. | ) | |

### Entry Discussing Motion for Summary Judgment

Plaintiff Gregory Benson is a prisoner at the New Castle Correctional Facility ("New Castle" or "the prison") who challenges a prison policy of not permitting inmates who are from the City of New Castle area to receive job assignments outside the prison, but permitting such assignments for inmates who are not from the City of New Castle area (hereafter "the policy"). New Castle Superintendent Wrigley seeks summary judgment as to Benson's claim.

Whereupon the court, having considered the pleadings, the motion for summary judgment and all filings and the record associated with such motion, and being duly advised, finds that the motion for summary judgment should be **granted.** This conclusion is based on the following facts and circumstances:

1.      Superintendent Wrigley seeks resolution of Benson's claim through the entry of summary judgment. Such motion must be granted if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Scott v. Edinburg,* 346 F.3d 752, 755 (7th Cir. 2003) (quoting FED. R. CIV. P. 56(c) and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007). The court must "construe all facts in a light most favorable to . . . the party opposing summary judgment, and . . . draw all reasonable inferences in his favor." *McGreal v. Ostrov,* 368 F.3d 657, 672 (7th Cir. 2004) (citation omitted). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook,* 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith v. Severn,* 129 F.3d 419, 425 (7th Cir. 1997)).

2.	Benson's claim is brought pursuant to 42 U.S.C. § 1983. This statute creates a federal cause of action for "the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw,* 512 U.S. 107, 132 (1994).

3.	Superintendent Wrigley argues in his motion for summary judgment that (a) Benson has no federally secured right to a prison job or to any particular prison job, and (b) even if such a right exists, the policy which is challenged is reasonably related to legitimate penological interests and is therefore constitutionally valid.

4.	Several general principles guide the court's consideration of Benson's claim.

a.	Lawful "incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (*citing Price v. Johnston,* 334 U.S. 266, 285 (1948)).

b.	Nonetheless, "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." *Bell v. Wolfish,* 441 U.S. 520, 545 (1979).

c.	"Section 1983 is not itself a source of substantive rights; instead it is a means for vindicating federal rights elsewhere conferred." *Ledford v. Sullivan,* 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

d.	"[P]rison regulations are permissible if they are reasonably related to legitimate penological interests and are not an exaggerated response." Beard v. Banks, 126 S. Ct. 2572, 2578 (2006); see also Overton v. Bazzetta, 539 U.S. 126, 131 (2003); Shaw v. Murphy, 532 U.S. 223, 228-29 (2001); *Turner v. Safley,* 482 U.S. 78, 89 (1987). Prison officials are given deference in establishing regulations and in determining appropriate restrictions, and a court will not second-guess regulations or practices that serve legitimate penological interests. *Id.*

e.	The Supreme Court has delineated four factors for determining whether a specific regulation or practice serves a legitimate penological interest. *Turner,* 482 U.S. at 89-90. The primary factor is whether a valid, rational connection exists between the restriction and a legitimate interest. *Id.* The other factors relevant in determining a restriction's reasonableness include whether the inmate has alternative means of exercising the right; the impact accommodation of the asserted right would have on guards, other inmates, and prison resources; and the absence of a reasonable alternative to the regulation or practice. *Turner,* 482 U.S. at 90.

f.	In determining whether a prison regulation is "'reasonably related to legitimate penological interests,'" a prisoner "must overcome the presumption that the prison officials acted within their 'broad discretion.'" *Shaw v. Murphy,* 532 U.S. 223 (2001).

5.   "[T]he first step in any [§ 1983] claim is to identify the specific constitutional right infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994). It is well settled that a prisoner has no constitutionally protected liberty interest in prison employment or a particular prison job. *Newsom v. Norris, 888* F.2d 371, 374 (6th Cir. 1989); *Harris v. Greer,* 750 F.2d 617, 618 (7th Cir. 1984); *Garza v. Miller,* 688 F.2d 480, 486 (7th Cir. 1982), *cert. denied,* 459 U.S. 1150 (1983). As a corollary to this principle, the loss of a prison job does not constitute a deprivation of a liberty interest because it is not an atypical and significant hardship in relation to the ordinary incidents of prison life. See *Sandin v. Conner,* 515 U.S. 472, 484 (1995). Superintendent Wrigley makes this point in his motion for summary judgment, and to the extent Benson's claim includes the contention that he is entitled under either the Eighth Amendment or the Fourteenth Amendment to a particular prison job he cannot prevail and Superintendent Wrigley is entitled to judgment as a matter of law.

6.   A more discerning consideration of Benson's claim, however, reveals that he is challenging the policy's exclusion of certain inmates, including Benson himself, from the opportunity to fill a prison job outside the prison. This challenge could implicate the guarantee of Equal Protection of the Fourteenth Amendment ("No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."). In order to sufficiently plead a claim for a violation of the equal protection component of the Fourteenth Amendment under § 1983, plaintiffs must allege that they received different treatment from other similarly situated individuals or groups. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432 (1985). Viewed in this light, Benson's claim is that inmates from the City of New Castle area are similarly situated to inmates not from the City of New Castle area but are treated differently from those inmates. Indeed, the policy does make this distinction and does dictate different treatment, *i.e.,* one group of inmates is permitted job assignments outside the prison, while the other group of inmates is not.

7.   The recognition that the policy treats inmates differently invites an analysis under *Turner,* even though inmates have no recognized right to the ultimate result–a prison job outside the prison. The policy Benson challenges has been defended by Superintendent Wrigley through the following, which Benson has not disputed:[1]

---

[1] Summary judgment is proper where the record after discovery "show [s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). To survive summary judgment, the nonmovant must set forth "specific facts showing that there is a genuine issue for trial."FED.R.CIV.P. 56(e). "Factual disputes are 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the [non-movant].'" *Oest v. Illinois Dep't of Corrections,* 240 F.3d 605, 610 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). The court must "construe all facts in a light most favorable to . . . the party opposing summary judgment, and . . . draw all reasonable inferences in his favor." *McGreal v. Ostrov,* 368 F.3d 657, 672 (7th Cir. 2004) (citation omitted). "'In the light most favorable' simply means that summary judgment is not appropriate if the court must make 'a choice of inferences.'" *Draghi v. County of Cook,* 184 F.3d 689, 691 (7th Cir. 1999) (quoting *Smith v. Severn,* 129 F.3d 419, 425 (7th Cir. 1997)). However, the non-moving party bears the burden of coming forward with specific facts from the record which show a genuine issue of material fact. *Morfin v. City of E. Chi.,* 349 F.3d 989, 997 (7th Cir. 2003) (citation omitted). "The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc.,*

    a.    Benson is incarcerated for criminal offenses that include selling cocaine and methamphetamine within 1000 feet of a park. His criminal record also includes the possession of marijuana. He is from the local community surrounding the prison.

    b.    For the prison, in certain instances, inmates work in the community performing services for public bodies such as the City of New Castle, Henry County, and the Debarment of Natural Resources. These inmates are designated as "inmate work crews." Members of inmate work crews make the same amount of money as inmates assigned to other paying jobs within the Facility.

    c.    Inmates assigned to these crews are supervised by two corrections officers and volunteers or the particular public employee supervising non-inmates who are preforming the same work that the inmates are preforming. For example, county employees supervise inmates who are assigned to work at the Henry County Memorial Park.

    d.    Although inmate work crews have a history of success in keeping the local community clean at a great cost savings to the community, incidents have occurred that raise issues concerning prison security. These incidents include various types of misconduct by inmates assigned to a work crew. The misconduct includes efforts to traffic contraband into the prison.

    e.    Because of incidents involving misconduct by inmates on work crews, New Castle authorities assign to inmate work crews only those inmates at the prison who present a minimal risk to the community and the prison's inmate and non-inmate population. One of the factors considered in assessing this risk is the inmate's residence prior to his incarceration. That factor conveys to New Castle authorities information showing what degree the inmate has a familiarity with the area in which inmate work crews are assigned. When that familiarity is high, experience is that the inmate's accessibility to contraband and to illegal behavior or other misconduct –e.g., planning escapes, conducting unauthorized visits--based on the proximity of friends, associates, and family members is likewise high. This type of misconduct poses a risk to the community and the prison's inmate and non-inmate population.

    f.    The policy is thus based on the concern of prison authorities that assignment of an inmate from the City of New Castle area to an inmate work crew raises the risk to the community and the prison's inmate and non-inmate population.

    g.    Allowing Benson to work in the community would require the addition of more supervisory corrections officers, which would cause a financial and personnel strain on the prison.

---

*v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

      h.     New Castle also has prison jobs which are performed inside the facility itself. Such job assignments (within the facility) produce the same inmate pay as to assignments to inmate work crews.

      i.     Benson was assigned to a job within the prison. This job paid him the same amount of money that he would have earned working on an inmate work crew. Benson, however, refused to work in this other position and was released from that job.

      8.     The evidentiary record in this case shows that the policy is rationally related to the legitimate purpose of preserving prison security and order. *Jordan v. Wolke,* 615 F.2d 749, 753 (7th Cir. 1980). 539 U.S. 126, 134 (2003). *Turner v. Safley,* 482 U.S. 78, 92 (1987) ("[T]he core functions of prison administration [are] maintaining safety and internal security."). Benson has not shown otherwise. *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (citations omitted) ("The burden . . . is not on the State to prove the validity of prison regulations but on the prisoner to disprove it.").

      9.     The other factors relevant in determining a restriction's reasonableness include: whether the inmate has alternative means of exercising the right; the impact accommodation of the asserted right would have on guards, other inmates, and prison resources; and the absence of a reasonable alternative to the regulation or practice. *Turner,* 482 U.S. at 90. These factors weigh in favor of the policy. Benson was not excluded from all prison job assignments, and in fact received a job assignment within the prison. He refused this alternative. The policy could be rendered unnecessary if additional supervision was provided through additional security personnel, but this reallocation of prison guards would either increase the cost of personnel (by adding additional shifts or positions) or would reduce the number of guards available inside the prison (by reassigning such guards to supervise inmate work crews).

      10.     Claims such as presented in this case must be considered in light of the special environment of a prison, where administrators "must be accorded wide-ranging deference in the . . . execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Pardo v. Hosier*, 946 F.2d 1278, 1280-81 (7th Cir. 1991) (internal quotations omitted). Nonetheless, "[f]ederal courts must take cognizance of the valid constitutional claims of prison inmates." *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996) (quoting *Turner v. Safley,* 482 U.S. 78, 84 (1987)). Benson's challenge to the policy, however, is not supported by a genuine issue of material fact, and Superintendent Wrigley is entitled to judgment as a matter of law. The defendant's motion for summary judgment is therefore **granted**. Judgment consistent with this Entry shall now issue.

      **IT IS SO ORDERED.**

Date: 06/29/2009

*signature: Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana